# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSE PENA,

      Plaintiff,

v.                                                                                           CV 12-0622 WPL/SCY

WILLIAM D. HAWES, JR. and
AMERICAN FAMILY INSURANCE,

      Defendants.

**ORDER**

Jose Pena was involved in a rear-end collision with William Hawes and filed suit to recover damages for the injuries he claims to have received in that accident. The parties presented testimony on May 19 and 20, 2014, and Pena has submitted the deposition of Dr. Michael Weiss taken June 17, 2014. In addition, Pena has moved for the admission of certain medical bills based on the testimony of Dr. Weiss (Doc. 186), and Defendants have renewed their motion for judgment as a matter of law. (Doc. 190.) This Order will resolve all remaining issues in this case.

While there is a minor dispute about where the accident occurred[1], there is no significant dispute about how the accident occurred. On March 3, 2009, in Santa Fe County, New Mexico, Pena was driving a Kenworth tractor that was towing a bucket trailer fully loaded with gravel and was entering Interstate 25 northbound at the Waldo Canyon entrance. William Hawes was driving northbound on I-25 in a Toyota pickup that was towing a trailer loaded with his personal belongings and rocks. Hawes admitted that he fell asleep while driving and that the front of his

---

[1] Officer Brown, the investigating police officer, testified that the accident occurred near mile marker 269, while Officers Reyes and Waller testified that the accident occurred before mile marker 268.

vehicle struck the rear of Pena's trailer. At the time of impact, Pena was going approximately 45 mph and Hawes was going 70 mph. The impact sheared off the brakes on Pena's trailer, causing the brakes to lock up and bringing the vehicle to an abrupt stop. While Defendants argue vaguely in their closing statement that Hawes made "efforts to avoid a collision" (Doc. 191 at 2), Hawes failed to keep a proper lookout and failed to keep his vehicle under proper control and these failures caused the accident to occur.

The real dispute in this case is whether Pena was injured in the accident, and if so, the extent of his injuries. Pena claims that he was violently thrown around inside his truck and initially injured his neck and back in the accident, and that he has had continuing back problems since the accident. I decline Pena's request that I do an experiment to try to shake a baseball cap off my head to recreate some of the conditions that he claims occurred during the accident. (Doc. 188 at 4.) Pena had every opportunity to personally perform such an experiment at trial or to have one of his expert witnesses do so or to testify about such an experiment. It is not appropriate for me to do ex parte experiments to determine issues in this case.

After a motor vehicle accident that occurred in 1994, Pena had a fusion in his low back at L5-S1 with the implantation of pedicle screws. Pena asserts that he was pain free after his recovery from that surgery until the 2009 collision occurred. Defendants argue that Pena had "long standing, chronic back pain" before 2009 and find it "unbelievable" that Pena had no complaints of pain before the accident. (Doc. 191 at 2.) Yet Defendants submitted no records of any medical care that Pena received for his back after his recovery from the 1994 surgery, and even their medical expert, Dr. Peeples, agreed that there were no medical records to support this argument.

Defendants once again argue that Pena was not injured in the accident. They claim that "[a]t trial, the plaintiff did not present *any* medical evidence that the muscle strain was caused by the accident" and that there "was no medical testimony from treating physicians or plaintiff's expert witnesses that connect Mr. Pena's pain to an injury or that even establish an injury occurred as a result of this accident." (*Id*. at 3.) They also claim that their expert, Dr. Earl Peeples, testified that "there is no basis for pain complaints due to the collision." (*Id*.) Let's examine the trial record to see if it will support Defendants' arguments..

The day after the accident occurred, Pena sought medical attention at St. Vincent Hospital for head, neck, and back pain. X-rays were taken of his neck and back, and a CT scan of the head was performed. The back x-rays disclosed a fracture of the S1 pedicle screw. Pena was diagnosed with strains to his neck and back and was directed to see a neurosurgeon to evaluate his back pain and the broken pedicle screw. On March 10, 2009, Pena saw Dr. Smucker, a neurosurgeon, and at that visit complained primarily of back pain. Dr. Smucker ordered a lumbar CT scan to evaluate the broken screw, and diagnosed Pena with a low back injury with axial (localized) pain. When Pena did not get better, Dr. Smucker referred Pena for a second opinion by another neurosurgeon, Dr. Hankinson, who ordered an MRI of Pena's lower back. In December of 2009 Dr. Hankinson also diagnosed Pena with a low back injury with localized pain. In September of 2011, Pena sought treatment from Dr. Michael Weiss at the Laser Spine Institute in Arizona, and Dr. Weiss diagnosed him with lumbar pain, radiculopathy and radiculitis, and hardware failure as a result of the 2009 accident. Dr. Weiss performed back surgeries on Pena in 2011 and 2012 in an attempt to help Pena recover from his injuries.

This brief summary of the medical evidence demonstrates that Defendants' statement that Pena failed to produce evidence from his treating physicians or expert witness to establish that an

injury occurred in the accident is simply false. In fact, all of the medical testimony is contrary to this claim. The physicians agreed that Pena suffered an injury in the accident, but there was a dispute between the physicians about the extent of the injury and whether surgery was appropriate. While it is permissible to vigorously advocate on behalf of a client, a lawyer shall not controvert an issue in a case unless there is a basis for doing so that is not frivolous. N.M. R. R. Prof. Conduct Rule 16-301. And without doubt, Defendants' argument here is frivolous. Even Defendants' expert, Dr. Peeples, testified unequivocally that Pena was properly diagnosed with a lumbar strain as a result of the collision. There is no support in the record for this argument.

Defendants also assert that Dr. Peeples testified that Pena "had no basis for making pain complaints due to the collision," and they specifically cite the trial transcript as support for this proposition. Yet what Dr. Peeples stated was that "[t]here is no traumatic anatomic basis for pain complaints which are *permanent or for impairment* due to the collision." (Italics added.) This is consistent with his testimony that Pena had a lumbar strain that was temporary in nature and would resolve with time. Dr. Peeples' testimony contradicts Defendants' argument that Pena "had no basis for making pain complaints due to the collision." Counsel has an obligation of candor toward the court and shall not knowingly make a false statement of material fact to the court. N.M. R. R. Prof. Conduct Rule 16-303(A). It is troubling that Defendants had the trial transcript and apparently "sanitized" Dr. Peeples' statement to make it appear to support a position he did not take.

This situation is particularly egregious because Defendants made, and I rejected, substantially similar arguments in their motion for summary judgment. (Doc. 68 and 88.) In that motion Defendants failed to discuss any of the medical evidence other than the report from Dr. Peeples, and even ignored Dr. Peeples' testimony that they did not like: that Dr. Peeples agreed

4

that Pena was injured in the accident and that it would take six to eight weeks for his injuries to completely resolve. (*Id*. at 3.) I am at a loss to understand how counsel thinks they will have any credibility with the court after continuing to make arguments that misrepresent facts in this case.

The testimony in this case is undisputed that Pena suffered injuries as a result of the accident; the real dispute is the nature, extent, and duration of those injuries and what treatment was necessary for them. The parties devoted significant attention to this issue, presenting experts in accident reconstruction (Nelson Welch, for Pena; Charles Crosby, for Defendants), biomechanical engineering (Janine Smedley, for Defendants) and medicine (Dr. Michael Weiss, for Pena; Dr. Earl Peeples, for Defendants), together with records from the physicians who treated Pena.

Nelson Welch and Charles Crosby agreed about many of the operative facts concerning the accident. They agreed that Pena's tractor-trailer rig weighed 80,000 pounds while Hawes' pickup towing a trailer weighed approximately 8,000 pounds, that Pena was wearing a seat belt but did not have a shoulder harness in the cab, and that large motor vehicles do not experience as much of a change in velocity in an accident as a smaller vehicle. Welch estimated that Pena's vehicle accelerated less than five mph during the accident, while Crosby testified that the tractor-trailer accelerated from three and one-half to four mph during the collision. Welch agreed it was highly unlikely that Pena was injured in the accident, but deferred an opinion on this issue to the physicians. Ms. Smedley testified that the forces that Pena experienced during the accident were similar to or less than the forces he would experience during normal activities of daily living, and that it was not likely that Pena sustained more than a transient strain to his muscles from the accident.

Pena presented testimony from Dr. Weiss to refute Ms. Smedley's opinion. In 2011 and 2012, Dr. Weiss was a surgeon at the Laser Spine Institute in Arizona who specialized in minimally invasive spine surgery. Dr. Weiss testified that the 2009 accident likely fractured the pedicle screw implanted during the 1994 surgery and also caused a disc protrusion at L4-5 with an associated annular tear.[2] Dr. Weiss performed surgery in September of 2011 to remove the broken screw. When Pena continued to have complaints of pain after that surgery, in February of 2012 Dr. Weiss performed a decompression of the disc space at L4-5 with a foraminotomy. In May of 2012, Pena was again reporting persistent problems with his back and Dr. Weiss recommended a fusion at L4-5 that could not be performed at the Laser Spine Institute.[3] While Dr. Weiss admitted that Pena had preexisting degenerative changes to his spine, Dr. Weiss was confident that the 2009 accident either caused the fracture of the screw and annular tear at L4-5 or aggravated Pena's non-symptomatic preexisting conditions.

In contrast, Defendants relied upon testimony from Pena's treating physicians through their medical records and from Dr. Peeples. As noted previously, Pena was diagnosed with strains to his neck and low back when he sought treatment at the emergency room at St. Vincent Hospital the day after the accident. Pena next saw Dr. Smucker, a neurosurgeon, from March 10, 2009, until November 19, 2009. Dr. Smucker ordered a CT scan which confirmed that the prior fusion from L5-S1 was not damaged in the accident. Because the fusion was not disrupted Dr. Smucker was not concerned with whether the S1 pedicle screw was fractured. Dr. Smucker referred Pena for physical therapy and to the pain clinic. Dr. Smucker found that Pena's back pain did not radiate down his legs in a radicular pattern, and he told Pena that surgery for pain

---

[2] Dr. Weiss also testified that Exhibit 22, the medical bills from the Laser Spine Institute, were reasonable and necessary and related to the 2009 accident. Therefore, I will grant Pena's motion to admit Exhibit 22 but will deny his request to admit Exhibits 14, 15, 18, 20, and 24.

[3] This surgery was subsequently performed by Dr. Reyna in August of 2012.

localized to the back is not successful. Dr. Smucker referred Pena to another neurosurgeon, Dr. Hankinson, who saw Pena three times from December of 2009 to February of 2010. Dr. Hankinson obtained an MRI of the lower back and also diagnosed Pena with a low back injury with localized pain. Because Dr. Hankinson found it difficult to determine the cause of Pena's pain he could not assure Pena that an operation would be effective.

Dr. Peeples reviewed Pena's medical records to render opinions concerning the injuries Pena received in the accident, and he developed five opinions after that review. He testified that: 1) Pena's fusion from the 1994 surgery was not disrupted by the 2009 accident; 2) Pena sustained a lumbar strain in the accident, which should have resolved without treatment; 3) Pena had degenerative changes in his spine that were common for his age; 4) the surgeries performed by Dr. Weiss and Dr. Reyna were not related to the 2009 accident but were elective procedures for chronic pain complaints and degenerative changes not related to the accident; and 5) Pena did not sustain any permanent injury or impairment from the accident.

Both Pena and Defendants launched vigorous attacks on the opposing party's expert. Pena accused Dr. Peeples of being "a paid advocate hit man brought in to do a hatchet job" on Pena. (Doc. 188 at 7-8.) Pena claimed Dr. Peeples is a professional defense witness, and Dr. Peeples was forced to admit that 95 percent of his work is for the defense. Pena also complained that Dr. Peeples was a combative and argumentative witness, and, at least on cross-examination, there is some truth to that claim. In turn, Defendants emphasized that Pena was not referred to Dr. Weiss by any of his treating physicians but was referred by his attorney more than one and a half years after he last saw Dr. Hankinson.[4] Defendants attacked the basis for Dr. Weiss's surgery, arguing that he had not reviewed the records of Pena's treatment since the accident and

---

[4] Similar to Pena's request that I perform an experiment, I may not consider the representations that Pena's counsel made concerning his cousin's experience at the Laser Spine Institute. (Doc. 188 at 7 n.3.)

7

relied upon information from Pena that was not true. They also argued that the Laser Spine Institute's lien on the proceeds of the lawsuit created a financial conflict of interest for Dr. Weiss.

Defendants have the better argument on the nature, extent, and duration of Pena's injury. Because of the great disparity in weight between the tractor-trailer, which weighed 80,000 pounds, and the vehicle driven by Hawes, from Pena's standpoint this was a fairly minor accident. His vehicle was accelerated from three and one-half to four mph in the collision. This minor acceleration is consistent with Pena telling Officer Brown, the investigating police officer, that he did not know he had been hit until after he pulled his truck to the side of the road. He also told Officer Brown that he was not injured, and both Officer Brown and Officer Reyes testified that Pena did not appear to be injured at the scene. It is understandable that, once the shock and adrenaline had worn off, Pena experienced some generalized pain and stiffness in his neck and back. Pena received appropriate medical care at the emergency room the next day and from Dr. Smucker and Dr. Hankinson over the next year. Because Pena's main complaints were that he had pain localized to his low back and he did not exhibit sensory deficits, weakness, or atrophy that were consistent with a dermotomal pattern, Dr. Smucker and Dr. Hankinson did not believe that Pena was a good candidate for surgery. And Dr. Smucker and Dr. Hankinson were proven to be correct by later events. Although Pena elected to proceed with two surgeries by Dr. Weiss and one surgery by Dr. Reyna, he consistently reported that he was no better after the surgeries and he was subsequently awarded total permanent disability benefits by the Social Security Administration.

Pena initially sustained strains to his neck and back in the 2009 accident.[5] His lumbar fusion at L4-5 was not disrupted. The strain to his neck resolved promptly. Because of the prior fusion at L4-5, it was appropriate for the physicians to order diagnostic studies (x-rays, CT and MRI scans) and treatment modalities (*i.e.,* physical therapy) to rule out a more serious injury to Pena's back. Because of his degenerative conditions, I believe that it would have taken Pena longer than six to eight weeks to fully recover from the injuries he received in the accident. However, Pena did not sustain any permanent injury or impairment from the accident, and the surgeries performed by Dr. Weiss and Dr. Reyna are not related to the 2009 accident and were elective procedures for degenerative changes not related to the accident.

Pena did not present any tax returns to document any wage losses and specifically disclaimed any request for lost wages. (T.P. 230.) He also did not make a claim for property damage. Considering the nature, extent, and duration of Pena's injuries, and the pain and suffering he experienced, Pena is entitled to the sum of $27,000 as a result of the 2009 accident.

In summary, Pena's motion for admission of medical bills is granted in part and denied in part as discussed above. Defendants' renewed motion for judgment as a matter of law is denied. Pena is entitled to recover the sum of $27,000, together with his allowable costs incurred.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

---

[5] Thus, I must deny Defendants' renewed motion for judgment as a matter of law.
A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.